EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ARCADIO GONZALEZ,

                Petitioner,

                    **REPORT AND RECOMMENDATION**

    -against-                 11-CV-5618 (MKB) (AYS)

WILLIAM LEE, Superintendent,

                Respondent.
--------------------------------------------------------X

**SHIELDS, United States Magistrate Judge:**

Petitioner, Arcadio Gonzalez ("Petitioner" or "Gonzalez"), seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(d).  For the reasons discussed below, it is respectfully recommended that the Petition be denied.

Gonzalez is currently serving a 25-year prison sentence, imposed on September 19, 2007, for Manslaughter in the First Degree, pursuant to New York Penal Law § 125.20(1), and two counts of Criminal Possession of a Weapon in the Second Degree, pursuant to New York Penal Law §§ 265.03(2) and (3).  As discussed below, his sentence followed entry of a plea of guilty.

Petitioner raises constitutional challenges to two alleged errors surrounding his guilty plea.  Specifically, he claims: (1) that his guilty plea was invalid because it failed to establish that he intended to kill his victim; and (2) ineffective assistance of counsel based on trial counsel's mishandling of psychiatric evidence.

<u>BACKGROUND</u>

The following facts are drawn from the present Petition, and the state court record.[1]

---

[1] "Plea Tr." refers to the hearing and plea transcript, <u>People v. Gonzalez</u>, June 28, 2007.  "S." refers to the transcript for the sentencing proceedings, <u>People v. Gonzalez</u>, September 19, 2007.

I.       Facts

Petitioner was charged with one count of Murder in the Second Degree and two

counts of Criminal Possession in the Second Degree under Indictment Number 2283-2006.  On

June 28, 2007, a suppression hearing began before Justice Robert W. Doyle.  (See Plea Tr.)

After a recess, however, Petitioner pled guilty to a reduced charge of one count of Manslaughter

in the First Degree and two counts of Criminal Possession of a Weapon in the Second Degree.

(Plea Tr. 61-70.)  In exchange for Petitioner's guilty plea, the prosecution recommended that he

be sentenced to twenty-five years' incarceration and receive five years post-release supervision.

Pursuant to the plea, Petitioner waived his right to appeal.  During the plea allocution, Petitioner

stated that he understood the terms of the plea agreement.  (Plea Tr. 62:9-21, 65:10-25.)

The circumstances surrounding the plea have been attested to by Craig E. McElwee

("McElwee"), Petitioner's trial-level defense attorney.  Specifically, in response to an Order of

the District Court, (see Order of Brodie, J., dated Dec. 7, 2012), Respondent filed McElwee's

Affirmation dated April 13, 2012, which outlines his representation of Petitioner, both before and

after his guilty plea.  Also filed was the report of the court-ordered psychiatrist who examined

Petitioner on February 19, 2007 and May 12, 2007, in response to his defense of extreme

emotional disturbance in his underlying criminal prosecution.[2]  (McElwee Aff., Docket Entry

("DE") [24].)  In his Affirmation, McElwee states that after meeting with Petitioner with the

assistance of a Spanish-speaking interpreter, he filed a "Notice of Extreme Emotional

Disturbance Defense" with the trial court on or about January 17, 2007.  (McElwee Aff., DE

---

[2] Also attached to McElwee's Affirmation are: (1) a Spanish translation of the psychiatric report;
(2) a letter to the assigned Assistant District Attorney dated June 22, 2007, proposing a plea
bargain offer; (3) Petitioner's Notice of Appeal to the Appellate Division, Second Department;
and, (4) a letter dated September 21, 2007, prepared by McElwee for Petitioner's signature.  (DE
[24]).  All of the foregoing documents were filed under seal.

[24], ¶ 5.)  Thereafter, a court-appointed psychiatrist evaluated Petitioner and reported his findings to McElwee.  (Id. ¶ 7.)  The psychiatric report (the "Report") stated as follows:

> [A]t the time of the offense, Mr. Gonzalez was so intoxicated with crack/cocaine as to become psychotic.  In this psychotic state, he became so overwhelmed with fear at the thought that he was going to be killed, that he lost any rational control over his behavior and engaged in the offense conduct.   I believe these significant psychiatric findings to be worthy of consideration by the Court in the disposition of this criminal matter.

(Report, DE [24], at 6.)

After receiving the Report, McElwee took a copy of the Report, translated into Spanish, and met with Petitioner at the Suffolk County Jail.  (McElwee Aff. ¶ 7.)  Following that meeting, McElwee sent a letter to the Assistant District Attorney assigned to Petitioner's criminal trial, Denise Merrifield ("ADA Merrifield"), with a plea offer to resolve the case, along with a copy of the Report.  (Id. ¶ 8.)  The plea offer proposed that Petitioner plead guilty to the reduced charge of Manslaughter in the First Degree, New York Penal Law § 125.20(2), with a sentence range of fifteen to twenty-one years' incarceration, to be determined by the Court.  (DE [24] at 16.)  In addition, prior to the suppression hearing conducted on June 28, 2007, McElwee conferenced the case extensively with the trial court and the prosecution regarding the Report and the proposed disposition.  (McElwee Aff. ¶ 10.)  During a recess in the suppression hearing, McElwee spoke with Petitioner through the assistance of a Spanish interpreter, whereupon Petitioner accepted the prosecution's plea offer and pled guilty to Manslaughter in the First Degree and weapons possession charges.  (Id. ¶ 12.)

As part of his guilty plea, Petitioner was placed under oath and informed the trial court that he was pleading guilty of his own free will after fully discussing the matter with counsel, and that no one forced or coerced him into entering the plea.  (Plea Tr. 63:21-64:5.)  Petitioner also stated that he understood that pleading guilty is the same as being found guilty after trial,

and that by pleading guilty he waived the right to confront the prosecution's witnesses against

him, to have those witnesses cross-examined by his attorney, to testify at trial, and to present a

defense.  (Plea Tr. 64:15-25.)  Petitioner further stated that he was not under the influence of

drugs or alcohol at the time of his guilty plea, and that his education culminated in eleventh

grade.  (Plea Tr. 65:2-8.)

ADA Merrifield conducted the factual allocution of the guilty plea, and the following

colloquy took place:

> MS. MERRIFIELD:  Arcadio Gonzalez, I draw your attention to June 3rd, 2006, at approximately 4:30 in the afternoon.  Were you in front of your home at 1731 Pine Acres Boulevard, Bay Shore, the Town of Islip, County of Suffolk, State of New York?
>
> THE DEFENDANT:  Yes.
>
> MS. MERRIFIELD:  Were you standing outside of your home on that date at that time?
>
> THE DEFENDANT:  Yes.
>
> MS. MERRIFIELD:  Did Thomas Esteves pull up in a vehicle?
>
> THE DEFENDANT:  Yes.
>
> MS. MERRIFIELD:  And did you shoot Thomas Esteves several times with your handgun?
>
> THE DEFENDANT:  Yes.
>
> MS. MERRIFIELD:  Did you shoot him in the head, the chest and the neck area?
>
> THE DEFENDANT:  Yes.
>
> MS. MERRIFIELD:  And did you intend to shoot him?
>
> THE DEFENDANT:  It wasn't my intention to kill him.

- 4 -

MS. MERRIFIELD:  That wasn't my question, sir.  Listen carefully.  Did you intend to shoot him?

THE DEFENDANT:  Yes.

MS. MERRIFIELD:  And did you intend to cause him serious physical injury, not to kill him but to cause serious physical injury?

THE DEFENDANT:  Yes.

MS. MERRFIELD:  And, as a result of shooting him several times, you caused his death?

THE DEFENDANT:  Yes.

MS. MERRFIELD:  And the gun that you shot him with was a .357 Magnum; is that correct?

THE DEFENDANT:  Yes.

MS. MERRIFIELD:  And that was a loaded gun that you possessed; correct?

THE DEFENDANT:  Yes.

MS. MERRIFIELD:  And you possessed that gun with the intent to use it unlawfully against someone; correct?

MR. MCELWEE:  If I might?

(Whereupon, Mr. McElwee conferred with the defendant.)

THE DEFENDANT:  Yes.

MS. MERRIFIELD:  Okay.  Now, with regard to – we're satisfied, Your Honor, as far as the allocution, if the Court is satisfied with regard to the allocution.

(Plea Tr. 66:5-68:18.)

On September 19, 2007, the parties appeared before the trial court for Petitioner to be sentenced.  (S. 1.)  Prior to the court imposing sentence, McElwee made numerous arguments on Petitioner's behalf, including contesting statements contained in the pre-sentence report.  (S. 4:9-5:6:13.)  After hearing from both parties, including a statement by Petitioner asking for forgiveness, the trial court sentenced Petitioner to the negotiated sentence of a determinate term of twenty-five (25) years imprisonment for Manslaughter in the First Degree with five (5) years post-release supervision, and a determinate term of fifteen (15) years imprisonment on each count of Criminal Possession of a Weapon in the Second Degree with five (5) years post-release supervision, with all sentences to run concurrently with each other.  (S. 9:14-10:7.)

II.    Post-Conviction Proceedings

     A.    The Direct Appeal

        On December 24, 2008, Petitioner appealed his sentence to the Appellate Division of the Second Department of the State of New York.  On appeal, Petitioner argued that his sentence was harsh and excessive, and should be reduced to the minimum sentence of five years imprisonment with two and a half years of post-release supervision.  (See Def.'s App. Br., Dec. 24, 2008 ("App. Div. Br."), at 4-7.)  On July 7, 2009, the Appellate Division affirmed Petitioner's sentence.  See People v. Gonzalez, 884 N.Y.S.2d 193 (2nd Dept. 2009).  On November 6, 2009, the New York State Court of Appeals denied Petitioner's request for leave to appeal.  See People v. Gonzalez, 13 N.Y.3d 859 (2009).

Petitioner filed a writ of error coram nobis with the Second Department, Appellate Division, seeking to vacate the July 7, 2009 decision and order affirming his sentence, on the ground that he received ineffective assistance of appellate counsel.  On December 26, 2013, the Appellate Division denied Petitioner's writ of error coram nobis and held that Petitioner failed to

establish that he was denied the effective assistance of appellate counsel.  See People v. Gonzalez, 976 N.Y.S.2d 890 (2nd Dept. 2013).

B.      The First Petition for a Writ of Habeas Corpus

On July 12, 2010, Petitioner brought a petition for a writ of habeas corpus, filed under Docket Number 10-CV-3366 in the Eastern District of New York, which was assigned to the Honorable Joanna Seybert.  In that petition, Petitioner argued: (1) that his right to a jury trial was violated; (2) that his plea was involuntarily coerced; (3) that he received ineffective assistance of counsel; and (4) that the court refused to review his mental health report.  (See Gonzalez v. Lee, 10-CV-3366, Pet., DE [1] ("First Pet.").)  Petitioner also requested a stay to allow him to pursue his unexhausted claims in state court.  (See First Pet. at 3-4.)

On August 3, 2011, Judge Seybert denied Petitioner's request for a stay, and dismissed the petition as premature.  (See Mem. & Order dated Aug. 3, 2011 in 10-CV-3366, DE [11].)  The petition was dismissed without prejudice, permitting Petitioner to file a new petition once he exhausted his state court remedies.  (Id.)  On November 15, 2011, Judge Seybert denied Petitioner's motion for reconsideration of the August 3, 2011 dismissal, and ordered that any new petition that Petitioner filed be assigned a new docket number, which led to the present matter, pending under Docket Number 11-CV-5618.  (See Mem. & Order dated Nov. 15, 2011 in 10-CV-3366, DE [18].)

C.      Motion to Vacate Judgment of Conviction

On September 7, 2010, and while his first petition for a writ of habeas corpus was still pending, Petitioner filed a motion in state court to vacate his conviction, pursuant to New York CPL §§ 440.10(1)(h) and (4), and 440.20(1) ("Section 440").  In that proceeding, Petitioner argued: (1) that trial counsel was ineffective for failure to properly advise him of a potential

psychiatric defense; (2) that trial counsel was ineffective for failure to undertake a proper evaluation of his intellectual cognitive capacity; and (3) that his guilty plea was rendered involuntary by the prosecutor's unsupervised questioning during the factual allocution of his guilty plea.  (See Mot. to Vacate J.).

On May 4, 2011, the Supreme Court, Nassau County, issued an order denying Petitioner's application.  (See People v. Gonzalez, Dec. and Order (Sup. Ct., Nassau County, May 4, 2011, DE [27].)  With respect to Petitioner's claim that his guilty plea was rendered involuntary, the trial court held that the "facts underlying his claim are matters which were clearly a part of the record of the proceedings that resulted in the judgment of conviction against defendant," and, as such, Petitioner's claim was "required to be raised by him as part of his appeal."  (Id.)  By failing to raise the claim on appeal, the trial court held that Petitioner was precluded from raising it in connection with his motion to vacate.  (Id.)

Regarding Petitioner's claims that he received ineffective assistance of counsel, the trial court found that Gonzalez failed to meet his burden of establishing his claim of ineffective assistance of counsel.  (Id.)  The court held that counsel negotiated a plea to a reduced crime, "after extensive discussion and numerous conferences," and, as such, there was "nothing on the record which casts any doubt that counsel adequately represented his client[.]"  (Id.)

Petitioner's application for leave to appeal to the Appellate Division was denied on September 7, 2011.  See People v. Gonzalez, Dec. & Order (2nd Dep't. Sept. 7, 2011).

D.    The Present Petition

Petitioner filed the present Petition on September 23, 2011, asserting two grounds for relief: (1) that his guilty plea is invalid; and (2) that he received ineffective assistance of counsel.  (See Pet., DE [1] at 4-14.)  Petitioner also argues that the trial court abused its

discretion by denying his Section 440 motion to vacate his judgment of conviction and guilty plea without an evidentiary hearing.  Petitioner's claim that an evidentiary hearing was required is not subject to habeas review, unless his guilty plea was not entered intelligently or voluntarily, which, as discussed below, is not the case here.  See Martuzas v. Reynolds, 983 F. Supp. 87, 94 (N.D.N.Y. 1997) (citing Brady v. United States, 397 U.S. 742, 755 (1970)).  As such, the Court need not address the issue of whether an evidentiary hearing should have been held in connection with Petitioner's Section 440 motion to vacate.

For the reasons discussed below, Petitioner's claims are either procedurally barred or without merit.  Accordingly, it is respectfully recommended that the present petition for habeas relief be denied.

## DISCUSSION

I.    Standard of Review

    A.    AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) satisfaction of AEDPA's deferential review of state court decisions.  See id.

1.      Exhaustion

A court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement first allows state courts the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"  Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Thus, a petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered.  Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).  Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'"  Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

2.      Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  This procedural bar applies even if the state court addressed a claim's merits in the alternative but decided that claim on independent procedural grounds.  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a

federal claim in an <u>alternative</u> holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).  When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar, a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Coleman</u>, 501 U.S. at 750.  To demonstrate cause, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 488 (1986).  Examples of such objective factors are "that the factual or legal basis for a claim was not reasonably available to counsel" or that "some interference by officials . . . made compliance impracticable."  <u>Id.</u> (internal quotation marks and citations omitted).  A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation.  <u>See Tavarez v. Larkin</u>, 814 F.3d 644, 650 (2d Cir. 2016); <u>Restrepo v. Kelly</u>, 178 F.3d 634, 640 (2d Cir. 1999).  As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage . . . ."  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result.  For example, a petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted."  <u>Dunham v. Travis</u>, 313 F.3d 724, 730

(2d Cir. 2002) (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995)).  To prevail, the petitioner must

put forth "new reliable evidence . . . that was not presented at trial.  Because such evidence is

obviously unavailable in the vast majority of cases, claims of actual innocence are rarely

successful."  <u>Schlup</u>, 513 U.S. at 324.

      Finally, it must be noted that "[t]he concepts of procedural bar and exhaustion often

interact in an important way."  <u>Dominguez v. Rock</u>, No. 12-CV-3269, 2016 WL 542120, at *5

(E.D.N.Y. Feb. 9, 2016).  "If a § 2254 petitioner has failed to present a claim to a state court but

can no longer do so – for example, if the time to file a state-court appeal has passed – then that

claim is considered procedurally barred rather than unexhausted."  <u>Id.</u> (citing <u>O'Sullivan v.

Boerckel</u>, 526 U.S. 838, 848 (1999)); <u>Lloyd v. Walker</u>, 771 F. Supp. 570, 574 (E.D.N.Y. 1991)

(nothing that "[w]hen a petitioner has not properly presented his claim to a state for

consideration on the merits, but it is clear that the state court would hold the claim procedurally

barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred

from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks

and citation omitted).

           3.     <u>AEDPA Standard of Review</u>

      If a state court reached the merits of a claim, a federal court may not grant

a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning

to 'contrary [to]' and 'unreasonable.'"  <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet,'" and for good reason. White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Metrish v. Lancaster, 569 U.S. 351, 358 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 419-20 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d

Cir. 2006). A state court's findings of fact will be upheld "'unless objectively unreasonable in light of the evidence presented in the state court proceeding.'" Lynn, 443 F.3d at 246-47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 4. Pro Se Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Petitioner's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). This liberal interpretation of the Petition, however, "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

### B. Claims for Relief

#### 1. Invalid Guilty Plea Claim

Petitioner seeks habeas relief on the ground that his guilty plea was invalid because the factual allocution portion of his plea did not establish the requisite elements of Manslaughter in the First Degree, pursuant to New York Penal Law § 125.20(1). For the following reasons, this claim should be denied.

As an initial matter, Petitioner did not raise this claim on direct appeal, but instead raised it as part of his Section 440 motion to vacate his judgment of conviction. The trial court rejected

the claim and held that the claim was record-based, and, as such, should have been raised on direct appeal, and thus Petitioner was precluded from raising the issue in his Section 440 motion. Gonzalez, 133 AD3d at 878. Therefore, the state court "expressly relied on a procedural default as an independent and adequate state ground" in denying Petitioner's unpreserved claim. Velasquez, 898 F.2d at 9.

To overcome the procedural bar, Petitioner must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner has not shown cause for the default and actual prejudice; nor has he demonstrated that failure to consider his invalid guilty plea claim will result in a fundamental miscarriage of justice. Thus, Petitioner cannot overcome the procedural bar. Notwithstanding this procedural defect, and out of an abundance of caution, this Court will address Petitioner's claim on the merits.

As a general matter, a guilty plea is constitutionally valid if entered into "voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)); see also Maldonado v. Warden, 17-CV-6368, 2019 WL 3321746 at *5 (E.D.N.Y July 23, 2019) aff'd, 2020 WL 5988527, at *1 (2d Cir. Oct. 9, 2020). "When a guilty plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination." Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)). Thus, the record must demonstrate that the guilty plea is entered voluntarily and intelligently. Boykin, 395 U.S. at 242-43.

As discussed below, the plea transcript and trial record demonstrate that Petitioner had "a rational as well as factual understanding of the proceedings against him." Godinez v. Moran, 509 U.S. 389, 396 (1993). For a guilty plea to be constitutionally valid, a defendant must receive "real notice of the true nature of the charge against him," and a description of the elements of the offense, i.e., intent. Panuccio v. Kelly, 927 F.2d 106, 110 (2d Cir. 1991) (denying habeas relief where the petitioner pled guilty to Manslaughter in the First Degree and during his plea allocution, stated he did not have intent to kill, but the plea transcript demonstrated that the petitioner understood the charges against him and the type of intent involved in the crime to which he pled guilty) (citation omitted).

Here, Petitioner participated in a clear colloquy with the trial court when he entered his guilty plea. In the presence of defense counsel, Petitioner swore an oath to tell the truth, and was asked a series of questions that demonstrated his familiarity with the case, and that he had an opportunity to consult with his attorney prior to entering the plea. (See generally Plea Tr. 61-70.) The court inquired whether Petitioner had been threatened or forced to plead guilty, to which he responded that he had not. (Tr. 64:2-5.) Petitioner also stated that he understood that pleading guilty was the same as being found guilty after trial, and that he was waiving his right to confront the prosecution's witnesses against him, cross-examine those witnesses, and his right to present a defense at trial. (Plea Tr. 64:11-25.) Petitioner also informed the court that he was not under the influence of any alcohol or drugs at the time he pled guilty, and that he had gone as far as the eleventh grade in education. (Plea Tr. 65:2-8.) Overall, Petitioner's sworn responses all indicate that he was capable of understanding the guilty plea he entered.

The prosecution also conducted a factual allocution on the elements of Manslaughter in the First Degree, New York Penal Law § 125.20(1), at the court's direction. (Plea Tr. 66:2-

68:18.)  New York Penal Law § 125.20(1) states that "[a] person is guilty of manslaughter in the first degree when with intent to cause serious physical injury to another person, he causes the death of such a person or of a third person."  N.Y.P.L. § 125.20(1).  As outlined above, the factual allocution conducted by the prosecutor clearly establishes each element of the crime to which Petitioner pled guilty.

Petitioner argues that his plea allocution establishes that he did not have the requisite intent, based on the following exchange with the prosecutor:

> MS. MERRIFIELD:   And did you intend to shoot him?
>
> THE DEFENDANT:   It wasn't my intention to kill him.
>
> MS. MERRIFIELD:   That wasn't my question, sir.  Listen carefully.  Did you intend to shoot him?
>
> THE DEFENDANT:   Yes.

(Plea Tr. 67:5-12.)

Pursuant to <u>Panuccio v. Kelly</u>, 927 F.2d 106 (2d Cir. 1991), the above excerpt of Petitioner's factual allocution is sufficient to establish that Petitioner not only had the requisite intent for a valid guilty plea to Manslaughter in the First Degree, but that he understood the difference in intent.  Here, the factual allocution continued when the prosecutor asked "[a]nd did you intend to cause him serious physical injury, not to kill him but to cause serious physical injury?"  Petitioner's response to that question, under oath, was yes.  (Plea Tr. 67:13-17.)  As such, the record is abundantly clear that Petitioner specifically conceded that he intended to seriously injure his victim, and the factual allocution established all of the necessary elements of Manslaughter in the First Degree.

In sum, It is clear that Petitioner's guilty plea was intelligent, knowing, and voluntary, and the factual allocution clearly established the requisite elements of Manslaughter in the First

Degree, including intent.  Therefore, Petitioner's request for a writ of habeas corpus on the ground that his plea was involuntary should be denied.

      2.    <u>Ineffective Assistance of Counsel Claim</u>

      Petitioner argues that he received ineffective assistance of counsel under the Sixth Amendment when defense counsel mishandled psychiatric evidence, which requires habeas relief.  The Court disagrees.

      First, as to exhaustion, this Court notes that Petitioner raised the claim that he received ineffective assistance of counsel in his Section 440 motion to vacate his judgment of conviction. In that proceeding, the court held that Petitioner's claim was without merit.  (DE [27].)  In particular, that court found that Petitioner failed to meet his burden of establishing his claim of ineffective assistance of counsel, noting that counsel negotiated a plea to a reduced crime "after extensive discussion and numerous conferences," and by obtaining "an advantageous plea to a lesser crime on his client's behalf[.]"  (<u>Id.</u>)  In addition, the court found that there was "nothing on the record which casts any doubt that counsel adequately represented his client," and that defense counsel's representation of Petitioner was meaningful and did not demonstrate ineffective assistance of counsel.  (<u>Id.</u>)  Thereafter, Petitioner submitted an application for leave to appeal to the Appellate Division, which was denied on September 7, 2011.  <u>Gonzalez</u>, Dec. & Order (2nd Dep't Sept. 7, 2011).  In view of the foregoing, Respondent does not contest that Petitioner properly exhausted this claim, and, thus, the Court acknowledges that Petitioner's claim is properly before this Court.

      Turning to the merits of Petitioner's claim, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), governs claims of Sixth Amendment ineffective assistance of counsel.  <u>See</u> <u>Lynn</u>, 443 F.3d at 247.  To establish a violation of the right to effective assistance of counsel under

Strickland, a habeas petitioner must show: (1) that counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense, i.e., that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable.  See Strickland, 466 U.S. at 687.

To show deficient performance, a habeas petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Id. at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential" and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  Id. at 689.  To establish prejudice, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 694.

However, a habeas petitioner "must do more than show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell v. Cone, 535 U.S. 685, 698-99 (2002).  "Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."  Id. at 699.  "The Strickland standard is a general one, so the range of reasonable application is substantial."  Harrington, 562 U.S. at 105. "Courts on collateral review may not second-guess reasonable professional judgments and impose on counsel a duty to raise every colorable claim suggested by a client."  Weingarten v. United States, 865 F.3d 48, 53 (2d Cir. 2017) (internal quotation marks and citation omitted),

cert. denied, 138 S. Ct. 1309 (2018). "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance." United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995).

As discussed above, a written affirmation from Petitioner's defense counsel, McElwee, was submitted to the Court. (DE [24].) Further, and as noted herein, the documents attached to McElwee's Affirmation demonstrate that counsel prepared a defense, engaged in motion practice, and arranged for the court appointment of a psychiatric expert, Alexander Sasha Bardey, M.D., who prepared a psychiatric report. (Id.) Defense counsel had the psychiatric report translated into Spanish for Petitioner and spoke with Petitioner at length regarding the report and the charges against him. (Id.) McElwee conferenced the case at length with the trial court and the prosecution, specifically regarding Petitioner's psychological profile and the findings contained in Dr. Bardey's Report. (Id.) Moreover, McElwee prepared for, and began, the suppression hearing, during which he conferenced with Petitioner during a court recess, after which Petitioner accepted a plea of guilty to the lesser charge of Manslaughter in the First Degree. (Id.) The record further demonstrates that during sentencing, defense counsel strongly advocated for Petitioner and ultimately negotiated a reduced charge. (Id.)

Petitioner cannot demonstrate that McElwee's representation was in any way deficient. Petitioner argues that defense counsel failed to utilize the Report during his sentencing, thereby concealing mitigating circumstances. (Pet. at 14.) Petitioner further asserts that McElwee wrongly conceded the mens rea component of Manslaughter in the First Degree, which was clearly inconsistent with his state of mind, as demonstrated by the Report. (Pet. at 9.) Neither of Petitioner's arguments establishes that defense counsel's representation was deficient. As noted above, Petitioner was charged in an indictment with Murder in the Second Degree. The factual allegations against him were that he shot the victim three times. Defense counsel

explained the charges against Petitioner to him, conferenced extensively with the trial court and prosecution regarding his state of mind and the findings contained in the Report, and was able to obtain an advantageous plea on behalf of Petitioner to the lesser charge of manslaughter.  "[D]ue process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed."  Mitchell v. Scully, 746 F.2d 951, 956 (2d Cir. 1984).

While defense counsel did not reference the actual Report during the plea allocution or sentencing, under the totality of the circumstances, the single decision not to raise an objection to the intent portion of the plea allocution, or introduce the Report was certainly not conduct that falls below a reasonable professional standard.  See Harrington, 562 U.S. at 110.  Further, Petitioner's argument that defense counsel should have objected, or not conceded, the mens rea component of Manslaughter in the First Degree is without merit.  Defense counsel negotiated and obtained the plea to that lesser charge and accepted the plea on behalf of his client.  During Petitioner's plea allocution to the lesser charge, he informed the court that he was pleading guilty after speaking to his attorney.  At that point, for defense counsel to object to Petitioner's mens rea, or intent (as Plaintiff suggests), during the plea that he facilitated simply would not make sense.

Similarly, Petitioner cannot demonstrate that he was prejudiced by defense counsel's representation.  Even assuming that defense counsel unreasonably failed to inform Petitioner of a psychiatric defense that would negate his intent at the time of the crime, it cannot be said that "but for" counsel's failure to raise the defense, the outcome of the appeal would have been different.  See Strickland, 466 U.S. at 688 (holding that, to prevail on an ineffective assistance of counsel claim, litigants must show "there  is a reasonable probability that, but for counsel's

- 21 -

unprofessional errors, the result of the proceeding would have been different."); see also Pignataro v. Poole, 381 Fed. App'x. 46, 50 (2d Cir. 2010).

Here, even if trial counsel erred, the result was harmless and did not affect the final outcome.  See Strickland, 466 U.S. at 688.  Petitioner argues that "had [he] been informed that he had a viable defense that negated the intent factor of the crimes he was charged with, he never would have taken a plea to Manslaughter in the First Degree."  (Pet. Reply, DE [28], at 5.) Petitioner theorizes that counsel could have negotiated his plea to Manslaughter in the Second Degree.  (Id.)  Petitioner has no support for this theory.  Even assuming that he did not intend to commit the crime, and his requisite mens rea was reduced to recklessness, the outcome of the trial would not have been different.  Had trial counsel successfully asserted an extreme emotional disturbance defense at trial, the charge of Murder in the Second Degree would have been reduced to Manslaughter in the First Degree, precisely the result counsel was able to obtain through plea negotiation.  Moreover, the claim is without merit, as Petitioner cannot establish, even with the Report successfully presented at trial, that he did not have the requisite intent during the commission of the crime.  Indeed, to the extent that the Report did establish that Petitioner could not have formed the requisite intent, it was not unreasonable for counsel to decide not to raise an objection to Petitioner's intent, nor introduce the Report.

Having found that Petitioner is unable to establish that defense counsel's performance was deficient, or that he was prejudiced by counsel's representation, the Court finds that the State court's decision to deny Petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, the Strickland standard.  As such, to the extent that the present Petition raises a claim of ineffective assistance of counsel claim, it should be denied.

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that the Petition for a Writ of Habeas Corpus be denied in its entirety.

OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing Respondent's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Petitioner at his last known address(es) and to file proof of service on ECF by October 23, 2020.  Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.  Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
        October 20, 2020

                                         /s/ Anne Y. Shields
                                        ANNE Y. SHIELDS
                                        United States Magistrate Judge